No. 58,885

In the Matter of ROGER D. THOMPSON, *Respondent*.

(716 P.2d 194)

Opinion filed March 28, 1986.

*Louis F. Eisenbarth*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, appeared and argued for respondent.

*Roger N. Walter*, disciplinary counsel, appeared and argued for the disciplinary administrator.

This original action in discipline was filed by Arno Windscheffel, disciplinary administrator, against Roger D. Thompson, of Junction City, an attorney admitted to the practice of law in Kansas. As no exceptions were filed to the report of the hearing panel of the Board for Discipline of Attorneys, the facts as determined by the panel are not in dispute and will be summarized herein. The panel considered three counts against the respondent.

## COUNT I

In 1977, respondent's wife was injured in an automobile accident. Unbeknownst to Mrs. Thompson, respondent filed a civil action on her behalf which she had not authorized. Respondent effected a settlement of his wife's case and collected $3,000.00 from the defendant's insurance carrier. The draft was "payable to Roger D. Thompson and Penelope M. Thompson, individually and as husband and wife." Respondent endorsed or caused to be endorsed his wife's name on the draft. The insurance carrier also required a release and respondent caused a facsimile of his wife's signature to be placed on the release and then secured its notarization by a notary public in his law office. Mrs. Thompson had no knowledge of the settlement.

## COUNT II

In 1982, respondent and Mrs. Thompson were having marital difficulties and they separated on or about June 9, 1982, when Mrs. Thompson moved to Kansas City. While separated and prior to the filing of any divorce proceedings, respondent borrowed the sum of $4,689.22 from State Farm Mutual Life Insurance Company on two life insurance policies owned by Mrs. Thompson. Respondent caused a facsimile of his wife's signature to be placed on the loan applications and on the checks issued for the

loan proceeds. Ultimately, respondent paid Mrs. Thompson $4,000 in partial reimbursement of the funds obtained. The loans were secured without the knowledge or consent of Mrs. Thompson.

On August 15, 1983, divorce proceedings were commenced by Mrs. Thompson in Johnson County. An ex parte restraining order was issued that date restraining respondent from "encumbering or disposing of any of the parties' property" and in addition ordering him to pay his share of the 1982 federal income tax refund to the clerk of the district court. When the tax refund was received, respondent did not pay his portion to the clerk in direct violation of the order. Respondent sought no modification of the order.

On December 13, 1983, respondent borrowed the sum of $41,133.35 from the Central National Bank of Junction City and secured the loan with a mortgage on the residence of the parties. The mortgage was executed by respondent as a single man notwithstanding that the parties were not divorced until February 16, 1984.

## COUNT III

Respondent was a life-long acquaintance of Maud C. Wright, an elderly lady of approximately 90 years of age, and had been her attorney for several years. Mrs. Wright was in failing health but mentally competent when, in September 1981, she suffered injuries in an accident in her home. Following hospitalization she was moved to a nursing home and it was determined that her home in Junction City should be sold. Respondent secured an appraisal which valued the property at $17,500 to $18,500. Respondent then arranged a series of "straw man" transactions through which title to the property changed hands several times. The first deed to the property conveyed it to Greg and Patricia Junghans. Greg Junghans was a business associate of respondent and each owned a 50% interest in a corporation known as Midwestern Diversified Investments, Incorporated (MDI). On January 8, 1982, MDI executed a check for $14,200 which was deposited in respondent's trust account. On that same date a check in the amount of $12,560 drawn on respondent's trust account was deposited in the account of Maud C. Wright ostensibly as payment for her residence property. $640.00 went to payment of attorney fees and expenses of sale, with $1,000.00

being retained in respondent's trust account for future expenses. Thereafter title to the property was conveyed by Mr. and Mrs. Junghans to MDI, and subsequently in 1983, the property was conveyed to Donald Bayless. Other than the $14,200 payment, no consideration changed hands in any of these transactions. Bayless then sold the property for $36,500. Of this amount respondent received $29,236.17. The property was appraised by Fletcher Simons, M.A.I., as having a value of $31,000 as of October 1, 1981, the approximate date of the initial deed to Junghans.

The hearing panel concluded, *inter alia*:

"Respondent's conduct demonstrates a casual indifference to the Law.

"There is no question that respondent filed a personal injury suit on behalf of his wife without her authorization and probably against her wishes. He then proceeded to settle the suit and caused a facsimile of his wife's signature to be placed on the release and settlement draft. The settlement proceeds were apparently used for family purposes and Ms. Thompson suffered no loss as a result of the personal injury accident and subsequent settlement.

"Respondent candidly admitted that he caused a facsimile of his wife's signature to be placed on applications for loans on two life insurance policies owned by Ms. Thompson on respondent's life. Both applications were submitted after the separation of respondent and Penelope M. Thompson. Ultimately, respondent reimbursed Ms. Thompson for all but $689.22 of the money which he had obtained from the insurance company.

"Respondent clearly violated an ex parte restraining order issued in the divorce proceedings instituted by Penelope M. Thompson when he failed to pay to the Clerk of the District Court his 1982 federal income tax refund and when he encumbered his home. Furthermore, the mortgage executed by respondent prior to his divorce was executed by him as a single person, obviously without regard to the position of the lender. . . .

. . . .

"At best, respondent's handling of Maud Caroline Wright's affairs involved the appearance of impropriety. At worst, respondent arranged to acquire the home of an ailing, elderly client for an amount substantially less than its fair market value, and then directed the resale at a handsome profit.

. . . .

"The panel unanimously concludes that there is clear and convincing evidence to establish that:

"1. Respondent engaged in conduct prejudicial to the administration of justice and involving deceit, or misrepresentation, which reflects adversely on his fitness to practice law in violation of DR 1-102(A) (4) (5) and (6) in that respondent executed a mortgage as a single person when, in fact, he was married to Penelope M. Thompson; and that he arranged the sale of the property owned by his client, Maud C. Wright, to himself, or a corporation controlled by him, for substantially less than its fair market value.

"2. Respondent violated DR 7-106(A) in that he disregarded a ruling of a

tribunal made in the course of divorce proceedings instituted by Penelope M. Thompson."

It is also obvious that respondent's handling of his wife's insurance policies and obtaining loans thereon by the use of facsimile signatures without her knowledge constitutes a serious violation.

We concur in the findings and conclusions of the panel. Respondent's actions constitute flagrant violations of the Code of Professional Responsibility and ordinary moral principles. In addition to what has been detailed herein, it is clear that on December 17, 1981, respondent directed a letter to the Department of Social Rehabilitation Services in which he stated:

"The proceeds from the $14,200 sale of the house [of Mrs. Wright] went to Harold Henning and Donna Hope [her grandchildren] . . . ."

This statement was made prior to the time any funds had been received by anyone from the sale of Mrs. Wright's property and was evidently a deliberate falsehood to obtain state benefits for Mrs. Wright. Respondent's respect and opinion of the law and our justice system was clearly expressed in a letter to his wife's counsel during divorce negotiations wherein he stated:

"One side line which should make you and your client happy. I will be surrendering my license to practice law at the close of this case but will do so not for the reasons listed in your letter to Waters but after reviewing the Petition, Restraining Order and letters I find that the practice of law is a parasitic endeavor which preys on the misery and misfortune of others. The world can probably due [sic] with one less parasite."

Such an attitude would appear to reflect far more than the panel's determination of "a casual indifference to the Law."

Having determined that respondent has flagrantly violated the Code of Professional Responsibility, a majority of the members of this Court would discipline the respondent by disbarment while a minority would indefinitely suspend the respondent. See K.S.A. 7-106 and 7-111.

IT IS THEREFORE ORDERED that Roger D. Thompson be and he is hereby disbarred from the practice of law in the State of Kansas, the costs of this action are assessed to the respondent, and the Clerk of the appellate courts is directed to strike the name of respondent from the rolls of attorneys admitted to the practice of law in Kansas.

IT IS FURTHER ORDERED that this order of disbarment shall be published in the official Kansas Reports.

IT IS FURTHER ORDERED that respondent shall forthwith comply with the provisions of Supreme Court Rule 218 (235 Kan. cxxxii).

Effective this 28th day of March, 1986.